**Darryl Gordon GRIGSBY, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

No. 2009–SC–000171–MR.

Supreme Court of Kentucky.

Jan. 21, 2010.

Daniel T. Goyette, Louisville Metro Public Defender, James David Niehaus, Deputy Appellate Defender, Louisville, KY, Counsel for Appellant.

Jack Conway, Attorney General, Michael Louis Harned, Assistant Attorney General, Office of Attorney General, Criminal Appellate Division, Frankfort, KY, Counsel for Appellee.

Opinion of the Court by Justice NOBLE.

Appellant, Darryl Grigsby, entered an *Alford* plea to murder, two counts of tampering with physical evidence, and third-degree arson. The trial court sentenced Appellant, in accordance with the Commonwealth's recommendation, to life in prison without the possibility of parole for twenty years. On appeal, Appellant argues that he was not properly informed of his rights when he pleaded guilty, and thus his plea must be vacated. For the reasons set forth below, his conviction and sentence are affirmed.

## I.  Background

A Jefferson County grand jury indicted Appellant, Darryl Grigsby, for murder, first-degree robbery, third-degree arson, two counts of tampering with physical evidence, abuse of a corpse, and for being a second-degree persistent felony offender. The Commonwealth served notice that it would seek the death penalty for the murder charge.

Prior to trial, Appellant pleaded guilty, pursuant to *North Carolina v. Alford*, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970), to murder, two counts of tampering

with physical evidence, and third-degree arson. In exchange for this guilty plea, the Commonwealth dismissed the first-degree robbery and abuse of corpse charges and recommended a total sentence of life in prison without the possibility of parole for twenty years.[1] The trial court accepted Appellant's plea and sentenced him in accordance with the recommendation.

In the plea agreement, Appellant waived several rights, including his right to appeal. Nevertheless, he appeals to this Court, arguing that his plea must be vacated because he was not informed of his right to enter a blind plea and demand jury sentencing, in lieu of having the court fix his sentence in accordance with his signed plea agreement. This, Appellant argues, is a "sentencing issue," which survives his waiver of the right to appeal under *Windsor v. Commonwealth*, 250 S.W.3d 306 (Ky.2008).

In response, the Commonwealth argues that this Court cannot reach the merits of this appeal due to Appellant's express waiver of his right to appeal. Alternatively, the Commonwealth asserts that his appeal is without merit and so his sentence should be affirmed.

## II.  Analysis

### A.  Waiver of the Right to Appeal

■ This Court must first decide whether this appeal can properly be con-

---

1. The recommendation for the murder charge was life in prison without the possibility of parole for twenty years. The recommendation for third-degree arson and tampering with physical evidence charges was five years each, to be enhanced by the second-degree persistent felony offender charge to ten years each. All sentences were to run concurrently, for a total sentence of life in prison without the possibility of parole for twenty years. Although life without the possibility of parole for twenty years is not enumerated by the

capital offense sentencing statute, KRS 532.030(1), it accurately reflects the effect of the violent offender parole statute, KRS 439.3401(2), on the life sentence in this case. That statute states that a violent offender convicted of a capital offense and sentenced to life cannot be paroled without first serving twenty years. Thus, this Court notes that the sentence Appellant received for capital murder is proper under KRS 532.030(1), when read in light of KRS 439.3401(2).

sidered, given Appellant's waiver. A waiver of the right to appeal in a guilty plea does not extinguish all appealable issues. *Id.* at 307 (citing *Roe v. Flores–Ortega*, 528 U.S. 470, 480, 120 S.Ct. 1029, 145 L.Ed.2d 985 (2000)). Rather, some issues "survive an express waiver of the right to appeal." *Id.* These issues include "competency to plead guilty; whether the plea complied with the requirements of *Boykin v. Alabama*, 395 U.S. 238, 244, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969); subject matter jurisdiction and failure to charge a public offense; and sentencing issues." *Id.* (some citations omitted).

Appellant asserts that his appeal is preserved, despite his waiver, because it is a sentencing issue under *Windsor*. However, the error he alleges is not the sort of sentencing issue to which that case refers.

In *Windsor*, this Court cited two cases for the proposition that "sentencing issues" were preserved for appeal notwithstanding a valid waiver. The first case was *Ware v. Commonwealth*, 34 S.W.3d 383, 385 (Ky. App.2000), where the appellant argued that the trial court erred in concluding that a statute barred her from receiving probation. The Court of Appeals held that, because appeals are preserved if an appellant "asserts that the trial court acted without authority in rendering a sentence," it could reach the issue of whether the trial court's ruling that probation was unavailable was without statutory authority, despite the appellant's waiver. *Id.* (citing *Gaither v. Commonwealth*, 963 S.W.2d 621, 622 (Ky.1998)).

The second case *Windsor* cited was *Hughes v. Commonwealth*, 875 S.W.2d 99, 100 (Ky.1994). In *Hughes,* the appellant argued that the trial court erred in concluding that a statute barred its consideration of his request for probation with an alternative sentencing plan. This Court held that it could reach the sentencing issue, despite the appellant's waiver, because "all defendants have the right to be sentenced after due consideration of all applicable law." *Id.* (citing *Wellman v. Commonwealth*, 694 S.W.2d 696, 698 (Ky. 1985)).

The cases cited in *Windsor* make clear that the phrase "sentencing issues" does not refer to any issue that arguably affected the ultimate sentence imposed. Instead, it refers to a claim that a sentencing decision is contrary to statute, as in *Ware,* or was made without fully considering what sentencing options were allowed by statute, as in *Hughes.* Such sentencing issues are "jurisdictional," *Cummings v. Commonwealth*, 226 S.W.3d 62, 66 (Ky. 2007), and thus they may be raised on appeal even from an unconditional guilty plea. This is not to say, of course, that such claims will succeed on their merits; but they may at least be raised before an appellate court and considered on their merits, notwithstanding a waiver of the right to appeal.

In light of these cases, Appellant's argument that he is appealing a sentencing issue under *Windsor* is mistaken. Appellant is not arguing that his sentence was contrary to, or exceeded that allowed by, statute. In fact, the trial court sentenced Appellant to life without the possibility of parole for twenty years for various crimes, including murder, for which Appellant could have received life without any possibility of parole, KRS 532.030(1), a harsher sentence. Nor is Appellant arguing that the trial court failed to fully consider the possible sentences it could have imposed on him. Consequently, the issue Appellant raises does not constitute a "sentencing issue" that survives his waiver.

Instead, the substance of Appellant's argument is that his plea did not comply with *Boykin,* which, like sentencing issues,

would survive his waiver. *Wellman,* 694 S.W.2d at 698. He assigns as error the trial court's failure to inform him of his right to enter a blind plea and demand jury sentencing. Although Appellant characterizes this as a sentencing issue, the core of his claim is that without knowledge of this right, his plea could not have been made knowingly and voluntarily, which is what *Boykin* requires. *Boykin,* 395 U.S. at 243 n. 5, 89 S.Ct. 1709; *see also Johnson v. Commonwealth,* 103 S.W.3d 687, 690–91 (Ky.2003). Given that *Boykin* challenges survive a waiver of the right to appeal, this Court can reach the merits of this challenge, now that it is properly framed. *Wellman,* 694 S.W.2d at 698.

## B. Merits of *Boykin* Challenge

■ In addressing the merits of Appellant's *Boykin* challenge, this Court concludes that his plea was made knowingly and voluntarily, and thus his sentence is affirmed. First, the plea agreement shows that Appellant Was informed of, and understood, his constitutional rights. Appellant (and his attorney) signed the plea, which states in pertinent part:

4. I understand that I may plead "NOT GUILTY" to any charge against me, in which event the Constitution would guarantee me the following rights:

(a) The right not to testify against myself;

(b) The right to a speedy and public trial by jury at which I would be represented by counsel and the Commonwealth would have to prove my guilt beyond a reasonable doubt;

(c) The right to confront and cross-examine all witnesses called to testify against me;

(d) The right to produce any evidence, including attendance of witnesses, in my favor;

(e) The right to appeal my case to a higher court.

I understand that if I plead "GUILTY," I waive these rights.

Additionally, this signed plea stated that Appellant discussed with his attorney and understood the charges against him, the possible defenses to them, the penalties he faced, and that the Commonwealth was recommending a sentence in exchange for his plea. Appellant and his attorney also signed the Commonwealth's Offer on A Plea of Guilty, which listed the possible penalties Appellant faced, as well as the Commonwealth's sentence recommendation.

Second, the trial court confirmed that Appellant understood the rights he was waiving at the plea hearing. The trial court told Appellant:

You would have had the right to a jury trial on these charges. But you're giving up that right by pleading guilty here today.... You would have had the right to call witnesses on your own behalf, you would have had the right to cross-examine any witnesses the Commonwealth would have put on at the trial, but you're giving up that right by pleading guilty.... You would have had the right to remain silent. They couldn't have compelled you to testify against yourself at the trial. But you're giving up that right.... You're giving up the right to appeal. If you, um, had been convicted at trial, you would have had the right to appeal this to a higher court. But you're giving up your appeal right.

Appellant responded that he understood his rights. Moreover, at the end of the plea hearing, the trial court confirmed that Appellant understood the ultimate consequences of his plea. The trial court asked Appellant:

With the rights we've gone over that you're waiving and the recommendation, everything to run together, so concurrent, so the, uh, total sentence would be life without the possibility of parole for twenty years. With that understanding, the rights we've gone over, is it still your desire to plead guilty?

Appellant responded: "Yeah."

Third, at the plea hearing, the trial court confirmed that Appellant was comfortable with his attorneys' advice and that his attorneys were comfortable with his plea. The trial court asked Appellant if he had an opportunity to discuss his plea with his attorneys, whether he was satisfied with their advice, and whether their advice was consistent with his plea. Appellant answered affirmatively. The trial court also held up the signed plea, asked Appellant if his attorneys had gone over it with him, and if the signature on the plea was his. Appellant answered affirmatively to this as well.

Appellant alleges only one deficiency in his plea that could render it unknowing: that he was not informed of his right to enter a blind plea and have the jury sentence him, instead of having the court sentence him according to his signed plea agreement. Appellant stresses that his signed guilty plea did not specifically inform him of this right and that nothing in the record suggests he was so informed. Indeed, Appellant is correct that the record does not show he was specifically informed that he could enter a blind guilty plea and demand that the jury fix his punishment to any sentence allowed by KRS 532.030, which includes the death penalty.

■ However, Appellant's argument fails because *Boykin* "does not require separate enumeration of each right waived." *Fontaine v. United States,* 526 F.2d 514, 516 (6th Cir.1975); *accord John-*

*son,* 103 S.W.3d at 691. Rather, as long as a defendant has a "full understanding of what the plea connotes and its consequences," it is valid. *Johnson,* 103 S.W.3d at 691 (quotation omitted, and citing *Sparks v. Sowders,* 852 F.2d 882, 885 (6th Cir.1988), and *Roddy v. Black,* 516 F.2d 1380, 1383 (6th Cir.1975)).

For this reason, guilty pleas are upheld even where specific rights are not enumerated by the trial court during the plea hearing. *See, e.g., United States v. Stead,* 746 F.2d 355, 357 (6th Cir.1984); *United States v. Taylor,* 281 Fed.Appx. 467, 470 (6th Cir.2008). Here, Appellant does not offer any authority requiring the trial court to inform him of his right to enter a blind guilty plea and demand jury sentencing in lieu of being sentenced according to his signed plea agreement. Instead, Appellant cites only Section 11 of the Kentucky Constitution and cases interpreting that section for the proposition that he had the right to do so.

Although Appellant may have had that right, the fact that it was not separately enumerated to him does not render the plea invalid, because *Boykin* "does not require separate enumeration of each right waived." *Fontaine,* 526 F.2d at 516; *Johnson,* 103 S.W.3d at 691. And here, given the rights listed in the plea agreement, the rights listed orally in the plea hearing, and the consequences of his plea as explicitly stated in both, there is no doubt that Appellant had a "full understanding of what the plea connote[d] and its consequences." *Johnson,* 103 S.W.3d at 691. Appellant knew that he was waiving his constitutional rights associated with proceeding to trial and that he would be sentenced to twenty years in prison without the possibility of parole. In exchange, he knew that the Commonwealth would recommend that sentence and take the

death penalty off the table. This satisfies *Boykin.*

Last, it is worth noting that Appellant's plea was made voluntarily. The trial court asked him if anybody had promised him anything in exchange for his guilty plea, other than the Commonwealth's promise to recommend a sentence. The trial court also asked him if anybody had threatened or coerced him to plead guilty. Appellant responded that nobody had. Additionally, the trial court asked Appellant if he was under the influence of alcohol or drugs, as well as whether he had ever been treated for, or was presently suffering from, any type of mental illness. Appellant responded that he was not. Further, in his signed plea, Appellant affirmed that "Other than [the Commonwealth's] recommendation, no one, including my attorney, has promised me any other benefit in return for my guilty plea nor has anyone forced or threatened me to plead 'GUILTY.'" Accordingly, there is no doubt that Appellant's plea was made voluntarily.

In summary, given that the substance of Appellant's argument is that his plea was unknowing and involuntary under *Boykin,* this Court can reach the merits of his appeal, notwithstanding that he waived that right when he pleaded guilty. *Windsor,* 250 S.W.3d at 307. However, given that his plea was knowing and voluntary, it complied with *Boykin,* and so there is no need to vacate his guilty plea, conviction, or sentence.

### III. Conclusion

For the foregoing reasons, the judgment of the Jefferson Circuit Court is affirmed.

All sitting. All concur.